James T. LOGAN, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 49789.

Missouri Court of Appeals,
Western District.

Sept. 5, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Robert S. Adler, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen.,

---

Mo. Dept. of Revenue, Jefferson City, for respondent.

Before ULRICH, P.J. and LOWENSTEIN and ELLIS, JJ.

ELLIS, Judge.

James T. Logan's driver's license was revoked for one year for failure to submit to a chemical test for his blood alcohol content pursuant to § 577.041.1[1]. He filed a petition for review of the revocation in the circuit court of Callaway County as authorized by § 577.041.4. After a hearing, the trial court entered its order denying Logan's petition and affirming the revocation. Logan appeals.

The sole issue on appeal is whether the arresting officer provided Logan with the information the legislature has declared to be necessary to enable a person to make an informed decision whether to take the test. Section 577.041.1 provides, in pertinent part:

> The request of **the arresting officer** shall include the reasons of the officer for requesting the person to submit to a test and also **shall inform the person** that evidence of his refusal to take the test may be used against him and **that his license shall be immediately revoked upon his refusal to take the test....** [Upon a refusal,] the arresting officer shall, on behalf of the director of revenue, **serve the notice of license revocation personally upon the arrested person and shall take possession of any license to operate a motor vehicle issued by this state which is held by the person.**

(Emphasis added).

In the case at bar, the arresting officer informed Dr. Logan that if he refused the test, "I [the arresting officer] must file a sworn affidavit with the Director of Revenue who shall revoke your driver's license for one year." The officer did not advise Logan *when* his license would be revoked for one year, but merely indicated that at some fu-

ture date, it would be revoked. The warning in no way suggested that, upon Logan's refusal, the officer was going to immediately personally serve him with a notice of license revocation, and demand that he turn over his driver's license as provided by § 577.041.1.

In *Bennett v. Director of Revenue*, 889 S.W.2d 166 (Mo.App.1994), this court held "that the opportunity to exercise intelligent judgment requires that the [motor vehicle] operator be advised of the mandatory effect of a refusal to be tested." *Id.* at 170. The mandatory effect of a refusal to submit to a test is that the operator's license "*shall be immediately revoked.*" § 577.041.1. The arresting officer is required to serve a notice of revocation on the driver at the time of the refusal, and take possession of the person's driver's license. *Id.* These actions cannot be construed as anything other than an *immediate revocation* of the operator's license. *Bennett* went on to declare that "the warning given the arrested person [must] clearly convey the message that upon a refusal, an *immediate revocation* of the person's license will occur." *Bennett*, 889 S.W.2d at 169 (emphasis added). The Southern District of this court reached a similar result in *Vinson v. Director of Revenue*, 892 S.W.2d 330 (Mo. App.1995). In that case, the arresting officer informed Vinson that his driver's license might be revoked if he failed to take the test. In finding this warning insufficient, the court stated:

> [W]e hold the officer's failure to clearly convey to Vinson that his operating privilege would be immediately revoked upon refusal to take the test prevented Vinson from making an informed decision on whether to take it. Therefore, Vinson's decision to forgo the test did not constitute a refusal within the meaning of Sec. 577.041.4(3).

*Id.* at 332.

In *Jones v. Schaffner*, 509 S.W.2d 72, 77 (Mo.1974), our Supreme Court stated that "[t]he decisive question is ... whether the statutory warning was given." Similarly, in

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

*Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985), the Court held that under § 577.041.1, the arresting officer is obligated to "inform the arrestee of the consequences" of refusing to submit to the chemical test. As we said in *Bennett*:

It is, therefore, clear that the mandate of the statute to inform the arrested person of the consequences of a failure to submit to a test must be obeyed for there to be a valid revocation based on such refusal. *See generally Jones,* 509 S.W.2d at 77 (arresting officer must provide "adequate knowledge of the facts and consequences" of refusal); *Winters v. McNeill,* 772 S.W.2d 749, 752 (Mo.App.1989); Sec. 577.041.5 (providing that if the trial court determines any issue in Sec. 577.041.4, including the issue of whether or not the arrestee refused to submit to the test, "not to be in the affirmative, he shall order the director to reinstate the license or permit to drive.")

*Id.* at 169–70. Telling Logan that his license would be revoked for one year at some future, unspecified and indeterminate date did not inform him of the *actual* consequences of a failure to submit to the test, namely, that his license would be instantaneously revoked.

The problem in this case is not that the officer failed to use the words "immediate," or "immediately." The officer need not use the exact wording of the statute. Rather, "any language which clearly conveys the message that the motorist's license shall be immediately revoked upon refusal to take the test is adequate." *Id.* at 171. The difficulty here is that Logan was not given the unequivocal notice that the revocation would occur as soon as he refused the test as dictated by § 577.041.1.

The dissent suggests that this is a case of form over substance. Not surprisingly, we disagree. The elected representatives of the people have determined what information is to be provided to an arrested person. Section 577.041.1 contains that determination, and obviously was signed into law by the Governor. As noted earlier, our Supreme Court has stated that "[t]he decisive question is ... whether the statutory warning was given." *Jones v. Schaffner,* 509 S.W.2d at 77. When the legislature makes a determination that certain information is to be provided to a citizen, the Governor has approved of the determination by signing the bill into law, and our Supreme Court has said that the decisive question is whether the information is given, we do not perceive the matter to be one merely of form, but rather of substance.

In a larger context, however, perhaps the most troubling part of this case is the position taken by the Director at oral argument that law enforcement officers need not follow the mandate of § 577.041.1 in warning arrested persons of the consequences of their refusal to take the test. The department of revenue is directed to provide forms to law enforcement agencies for notice of suspension or revocation, notice of rights and responsibilities and related matters. § 302.520.4. At oral argument, counsel for the Director informed the court that "alcohol influence report" forms had been revised to take account of the amendments to § 577.041.1 in 1993. The form in question contains the language to be used by the arresting officer in warning the arrested person of the consequences of refusing to take the test. The form anticipates the printed language will be read to the person under arrest by the officer. Thus, it is the document on which the law enforcement officer relies to insure that he or she properly warns the arrested person as required by § 577.041.1. In revising the form, the department construed § 577.041.1 to mean that the warning read as follows: "If you refuse to take the test(s), I must file a sworn affidavit with the Director of Revenue who shall revoke your Drivers License for one year." However, the statute provides that **"the arresting officer ... shall inform the person ... that his license shall be immediately revoked upon his refusal to take the test...."** The statute is clear and unambiguous, requiring no construction. In *Bennett,* we held that the statute did not require the officer to use the exact words of the statute,

but rather that "any language which clearly conveys the message that the motorist's license shall be immediately revoked upon refusal to take the test is adequate." *Id.* at 171. Nevertheless, we offered the practical advice that the simplest, and surely the best approach for police to use, would be "to use language that tracks the statute." *Id.* The department's interpretation of the statute does neither. The inadequate revision of the "alcohol influence report" form, and the position taken by the Director, evidence a disregard for the directive of the legislature and will, as this case demonstrates, foster confusion and litigation.

Therefore, consistent with the holdings in *Bennett* and *Vinson,* the judgment of the trial court is reversed, and the Director is ordered to reinstate Logan's license.

ULRICH, P.J., concurs.

LOWENSTEIN, J., dissents in separate dissenting opinion.

LOWENSTEIN, Judge, dissenting.

The result reached here, the reinstatement of the license of a driver who refused to take the test for blood alcohol content, values form over substance. As I see it, the majority's decision far extends the envelope of the warning necessary to advise a motorist who is reasonably suspected of driving while impaired of the effect of his or her failure to take the test. The driver in this case knew a revocation of one year would result from his failure to take the test. The appellant driver received sufficient information to understand the impact of his refusal to take the test on his driving privileges. To allow the appellant to escape the effect of the law because "immediate," or a synonym therefor, was not used, is wrong.

Simply put, the judgment under review is now reversed and driver's suspension is averted *only* because the word "immediate" or a like word was not included in the warning. This is illustrated by the language used by the majority at page —— of the slip opinion which states:

The problem in this case is not that the officer failed to use the words "immediate," or "immediately." The officer need not use the exact wording of the statute. Rather, "any language which clearly conveys the message that the motorist's license shall be *immediately* revoked upon refusal to take the test is adequate." *Id.* at 171. The difficulty here is that Logan was not given the unequivocal notice that the revocation would occur as soon as he refused the test. (Emphasis added).

Under the opinion adopted today, had the officer told Logan the literal truth under § *577.041.1:* "if you refuse, I'll give you a 15 day permit, after which, if you don't file a petition for review, your license will be revoked for a year," then this too would have failed to adequately inform the motorist of the consequences.

I share the majority's concern as to why the director chose to elect to monkey with the language of the notice statute. That decision, while successful at manufacturing this appeal, should not alter the trial court's decision.

The purpose of this law is to get drunk drivers off the road. *Section 577.041* "requires only that the officer inform the arrestee of the consequences for refusing to submit to the examination as well as why the test is being administered." *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985). Prior to 1993, § *577.041* required the arresting officer to inform the driver the license "may be revoked" for failure to submit. *Mullen v. Director of Revenue,* 891 S.W.2d 562, 563 (Mo.App.1995). The officer's report of a failure to submit was sent to the Director of Revenue who was to revoke the license for one year. *Bennett v. Director of Revenue,* 889 S.W.2d 166, 168–169 (Mo.App.1994). The 1993 amendments to § *577.041* give the officer the authority to: 1) serve a notice of revocation on the driver; 2) take possession of the driver's license and issue a fifteen day temporary permit; and 3) make a report to the Director, including the driver's refusal to submit to a chemical test.

Upon receipt, the director is to revoke the license for a year. In subsection 4. the procedure is defined for a driver to contest the revocation, including judicial determination of "[w]hether or not the person refused to submit to the test." *Bennett v. Director*, 889 S.W.2d at 168–69.

This court in *Bennett*, and the southern district in *Vinson v. Director of Revenue*, 892 S.W.2d 330 (Mo.App.1995) have addressed the warning or notice given by the arresting officer. In *Bennett*, following the 1993 amendments in which the statutory language was changed to its present form, (license shall be immediately revoked upon refusal), the officer's warning used the old language that the license "may" or "could" be revoked, and such warning, by not using "the exact words of the statute," mislead the motorist. *Id.* at 168 and 170–71 *Vinson* reached a like result. The officer "explained to him that his driver's license might be revoked if he failed to take the test," and the court held such language failed "to clearly convey [that] ... his operating privilege would be immediately revoked from making an informed decision on whether to take it." 892 S.W.2d at 332.

The warning given Logan, that the officer "must file ... with the Director ... who shall revoke your drivers license for one year," while not tracking the statutory language by inserting the word "immediately" in the notice, does not call for a reversal and reinstatement of Logan's driving privileges. Although *Bennett* speaks of the post–1993 statute calling for conveying "... the message that upon a refusal, an immediate revocation of the person's license will occur," the message in the case at bar should be held sufficient to convey to the driver that the consequence of his not taking the chemical test would be *definite*, and the loss of his license for a year would be certain. The warning here substantially comports with the statute. The warning here contrasts with *Bennett* and *Vinson*, which gave the driver an impression of hope that his license would not certainly be lost for refusal to take the test. As such, this less than perfect notice should be held to be sufficient in helping the driver to make a decision. *Mullen v. Director of Revenue*, 891 S.W.2d at 563, held as was further stated on page 171 of *Bennett:*

> However, any language which clearly conveys the message that the motorist's license shall be immediately revoked upon refusal to take the test is adequate.

*See also, Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975).

The intent of the legislature to divert drunk drivers from our roads is evident by a whole statutory scheme, of which § 577.04.1 is but a part. The construction of this statute, in the result reached here today leads to an unreasonable result, *Breeze v. Goldberg*, 595 S.W.2d 381, 383 (Mo.App.1980) flies in the face of legislative intent, and reaches an illogical result. *Lebeau v. Kelly*, 697 S.W.2d 312, 315 (Mo.App.1985).

I would affirm the judgment.