Debra J. CATES, Plaintiff-Respondent,

v.

DIRECTOR OF REVENUE STATE OF
MISSOURI, Defendant-Appellant.

No. 69336.

Missouri Court of Appeals,
Eastern District.
Division One.

March 25, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Charles Rizzo, St. Louis, for respondent.

DOWD, Presiding Judge.

The Director of Revenue (Director) appeals from the order of the St. Louis County Circuit Court reinstating the driving privilege of Debra J. Cates (Driver) after it had been revoked by the Director because Driver refused to submit to a chemical test when suspected of driving while intoxicated. We affirm.

## I. Background

By agreement of the parties, the facts are taken entirely from the arresting officer's report and certified records of the Department of Revenue regarding this case. At or around 5:17 p.m. on October 28, 1994, Officer responded to an accident in St. Louis County. When he arrived, Officer found Driver behind the wheel of her car with the engine running. Officer noticed that her speech was slurred, she spoke in a rambling fashion, and had trouble keeping her eyes open. Officer performed a roadside sobriety test, which Driver failed. Officer did not notice the smell of liquor on Driver's breath, but he did ask her if she had taken any prescription drugs. Driver admitted taking estrogen and malaria prevention pills, but denied taking anything else. Officer placed her under arrest for suspicion of drug related DWI. Before placing her into the police car, he searched her purse. There, he found a white tablet marked "WATSON 387." Driver said it was a muscle relaxant prescribed by her doctor, but did not have the prescription bottle with her and refused to give her doctor's name.

Officer took Driver to a hospital emergency room for an examination. He also asked her to take a blood or urine test. Driver used her own cellular phone to call an attorney, who advised her to agree to a breath test, but to refuse a blood or urine test.

Officer then read Driver the implied consent waiver, stating, "If you refuse to take the test(s), I must file a sworn affidavit with the Director of Revenue who may revoke your Drivers License for one year." She again refused to take a blood or urine test and would not answer any further questions. On November 8, 1994, Director sent Driver a "NOTICE OF REVOCATION OF YOUR DRIVING PRIVILEGE/TEMPORARY DRIVING PERMIT."

On November 10, 1994, Driver filed a "Petition for Review," and the circuit court issued a stay order. On October 4, 1995, the circuit court issued a judgment sustaining Driver's petition, finding that she was not clearly informed that her driver's license would be immediately revoked upon refusal to take the test, citing *Logan v. Director of Revenue*, 906 S.W.2d 888 (Mo.App. W.D. 1995). Director appeals.

## II. Advice of Counsel

In her first point, the Director alleges the trial court erred in setting aside the revoca-

tion on the grounds that the warning was misleading because Driver's refusal was based on advice of counsel, and not the statement by the officer.

Section 577.041.1, RSMo 1994 [1] requires:

The request of the arresting officer [to submit to a chemical test] shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person ... that his license *shall be* immediately revoked upon ... refusal to take the test.

(emphasis added) In *Bennett v. Director of Revenue*, 889 S.W.2d 166 (Mo.App. W.D. 1994), the court stated:

[U]nder § 577.041.1, the arresting officer is obligated to inform the arrestee of the consequences of refusing to submit to the chemical test. It is, therefore, clear that the mandate of the statute to inform the arrested person of the consequences of a failure to submit to a test must be obeyed for there to be a valid revocation based on such a refusal.

*Id.* at 169; (quotes and citations omitted)

■ In the instant case, Officer advised Driver, "If you refuse to take the test(s), I must file a sworn affidavit with the Director of Revenue who *may* revoke your license for one year." (emphasis added) The law is clear that the *officer* is obligated to inform the arrestee that a failure to take a drug test *shall* result in her license being immediately revoked. It is therefore of no consequence that Driver spoke to her attorney before refusing to take the test. Point denied.

### III. Adequacy of Warning

In her second point, the Director alleges the circuit court erred in setting aside the revocation because Driver was accurately informed of the consequences of her refusal to submit to the test. Specifically, she claims that the statute does not provide for the driving privilege to actually be "immediately" revoked, and a revocation is not certain to occur.

■ A warning about the implied consent law is sufficient for due process unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides. *Teson v. Director of Revenue*, 937 S.W.2d 195 (Mo.banc 1996).

In *Bennett v. Director of Revenue*, the court addressed a similar situation. There, the driver failed a roadside sobriety test. *Id.* at 167. The officer suspected that she was under the influence of marijuana. *Id.* The officer read her the terms of the implied consent law and asked her to take a blood test, which she refused. *Id.* The text of his warning was exactly the same as that used in the instant case, as detailed above. *Id.* The court concluded that terms "may" and "shall" are significantly different, where "may" denotes a possibility and "shall" denotes a compulsion, obligation, or necessity. *Id.* at 169. Thus, the court required that the warning given "clearly convey the message that upon a refusal, an immediate revocation of the person's license will occur." *Id; see also Vinson v. Director of Revenue*, 892 S.W.2d 330 (Mo.App.S.D.1995) (The officer informed the driver that if he failed to take the test, his license "might be revoked." *Id.* at 332. The court found that the warning prevented Vinson from making an informed decision on whether to take the test. *Id.*)

■ In the instant case, the exact same warning was read to Driver as that given in *Bennett.* Accordingly, we conclude that the warning did not accurately represent the consequences of the refusal, therefore preventing Driver from making an informed decision within the meaning of § 577.041.4(3).

We note that the Missouri Supreme Court's recent decision in *Teson v. Director of Revenue* is not at odds with the instant case. There, an officer warned a driver that if he did not take a chemical test the Director "shall revoke your license." 937 S.W.2d at 196. The question before the court was whether or not the omission of the word "immediately" prejudiced the driver. *See Id.* at 195–96. The court concluded that the officer's failure to use the term "immediately" did not mislead or prejudice driver. *Id.*

---

1. All statutory references are to RSMo 1994.

**284** ▮

at 198. But, the court also distinguished *Bennett* and *Vinson*, explaining that the warnings given there "bore the potential of misleading the arrestee into believing that the consequences of refusal were different than the law actually provided." *Id.* at 197. The instant case presents us with the exact same problem. Therefore, the rule in *Teson* does not apply. Point denied.

The order of the trial court is affirmed.

REINHARD and GARY M. GAERTNER, JJ., concur.

1. All statutory references are to RSMo 1994.