Sandra Anne JENNINGS,
Petitioner–Appellant,

v.

William Glenwood JENNINGS,
Respondent–Respondent.

No. 23426.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 21, 2000.

Petition for Rehearing and Transfer Denied
Dec. 13, 2000.

Henry S. Clapper, Monett, for appellant.

No brief filed by respondent.

PREWITT, Judge.

Sandra Anne Jennings ("Appellant") appeals from the trial court's order amending a decree of dissolution transferring primary physical custody of two children born to her marriage with William Glenwood Jennings ("Respondent") to Respondent and assessing child support against Appellant. Appellant contends that the trial court erred in transferring custody of the children because there was insufficient evidence to demonstrate that substantial changes had occurred, and because the transfer of custody was premised on an intrastate relocation of the children without substantial evidence showing that the best interests of the children would be served by restricting their residence to the Marionville school district.[1]

The parties' marriage was dissolved by judgment and decree entered April 24, 1998. In that decree, Judge Samuel C. Jones granted the parties joint custody of their two minor children, with Appellant awarded primary physical custody "at all times when she is not away from the home working; at all time [sic] when [Appellant] is away from home working, [Respondent] shall have physical custody of the said children." The decree also provided that "neither parent may relocate the children or either of them outside the Marionville, Missouri, school district without the approval of the Circuit Court of Lawrence County." At the time of the dissolution, both parties resided in Marionville. Pursuant to an agreement between the parties, the children stayed with Respondent for a six-week period, beginning March 14, 1998, while Appellant attended flight attendant school.

Appellant filed a motion for a new trial, contending, among other things, that the trial court erred in its calculation in dividing the marital property. Following a hearing on the motion, the trial court sustained her motion as a motion to amend the judgment of April 24, 1998, stating in a docket entry: "Court recognizes need to amend judgment to calculate child support in light of Supreme Court's suspension of new Form 14 guidelines and/or instructions." Appellant remarried on July 4, 1998. Her new husband worked and resided in Parkville, Missouri.

Respondent filed a motion for an order to show cause in which he contended Appellant should be held in contempt for her refusal to vacate the marital home which the court had awarded to him. That motion was heard on July 17, 1998. Neither Appellant nor her attorney was present at that hearing. The court denied a motion for continuance that Appellant's attorney

---

1. As in the previous appeal between these parties involving custody of the children, Respondent has filed no brief. *See In re Marriage of Jennings,* 994 S.W.2d 78 n. 1 (Mo. App.1999) (*"Jennings I "*). Although there is no penalty for not filing a brief, this Court adjudicates without the benefit of whatever argument Respondent could have made. *Id.* We are concerned, however, as to why, if Respondent is genuinely interested in custody of the children, he would not have presented his contentions to this Court.

had filed, sustained Respondent's motion for an order to show cause, and ordered Appellant to vacate the home. At the request of the trial court, Respondent's attorney prepared an amended judgment which was filed on July 20, 1998. The amended judgment awarded joint legal custody to the parties, but designated Respondent as the principal physical custodian of the parties' children, and assessed child support against Appellant. Appellant appealed from the amended judgment.

Appellant surrendered the house in Marionville and moved to Parkville, Missouri, to live with her new husband on August 2, 1998. Appellant's job as a flight attendant required her to commute to Chicago, Illinois, from where she left for her assignments.

This District, by opinion filed June 16, 1999, reversed the trial court's award of custody and child support, finding that, as neither party had requested modification of custody or child support, "the trial court had no jurisdiction and erred in changing primary physical custody from [Mother] to [Father]," and in assessing child support against Mother. The case was remanded for re-calculation of child support as was previously noted in the trial court's docket entry. *Jennings I.*

Appellant was residing in Parkville with the children when this District's decision was filed. On June 24, 1999, Respondent filed a motion to modify the April 24, 1998 judgment. He alleged "certain substantial and permanent changes in the circumstances of the children and their Mother," specifically, 1) that Appellant moved outside the Marionville school district; 2) that Appellant works "regularly for United Airlines, and is seldom at home"; 3) that Appellant has remarried; 4) that Appellant is gainfully employed and able to bear costs; 5) that the children prefer to live with their father; and 6) that "recomputation of child support in light of the parents' present circumstances would result in a change in the amount thereof in excess of 20%." Respondent did not file a parenting plan with his motion to modify the judgment. On August 2, 1999, Respondent filed a motion for a pendente lite order providing that the children remain in the Marionville school district.

Following an August 17, 1999 hearing on Respondent's pendente lite motion, the trial court made the following docket entry: "On [Respondent's] motion for temporary relief, court finds that the judgment entered April 24, 1998, is in full force and effect; including that the children shall not be relocated outside the Marionville School District. [Appellant] and [Respondent] shall abide by the terms of the judgment." Thereafter, Appellant filed a motion requesting withdrawal of the docket entry and a proceeding to determine child support as directed by the mandate of the Court of Appeals.

On September 14, 1999, Appellant filed a counter-petition and answer to Respondent's motion to modify. Specifically, she alleged a change of circumstances since the granting of the dissolution "which makes the present custody and visitation arrangement unworkable," and cites her relocation and remarriage and Respondent's cohabitation "with a person to whom he is not married" as such changes. Respondent married the woman to whom Appellant referred on October 29, 1999, ten days before the November 8, 1999 hearing. Appellant's cross-petition requested modification of custody, visitation, and child support.

The parenting plan proposed by Appellant gave Appellant custody of the children and visitation to Respondent on the second and fourth weekends of each month from Friday through Sunday, with specific holiday visitation and visitation for two periods of two weeks each summer. According to her proposal, the party "obtaining physical custody of the minor children shall provide transportation."

Respondent's new wife, Michelle, has four children by a previous marriage, and the children all live with their father. She

testified she did not work and she was prepared to stay home to take care of Respondent's girls. Respondent and his wife, Michelle, live in a two-bedroom home. Michelle has visitation with her children on the same weekends that Respondent's children visit.

On November 8, 1999, the circuit court heard the parties' motions to modify. The report by the guardian ad litem was filed November 15, 1999. The guardian ad litem opined that a new arrangement for visitation would be necessary if Appellant remained in Parkville, as "the original decree will not work with [the oldest child] in school." She further informed the court that "[s]ince there have not been substantial and continuing changes that have resulted in detriment to the children," she did not believe it would be in the best interests of the children for custody to be changed. She suggested that if the court found the move from Marionville was not appropriate for the children, that Appellant should be given the opportunity to return to the Marionville school district.

A judgment modifying the decree was filed on December 14, 1999, transferring custody of the children to Respondent as "the primary, residential, custodian." Appellant was ordered to pay $209.00 per month for child support. A Motion for Reconsideration of Judgment was filed by the guardian ad litem on December 17, 1999, and Appellant filed a motion for a new trial on December 22, 1999.

On January 10, 2000, the circuit court overruled Appellant's motion for a new trial and filed its modified judgment providing that "[i]f [Appellant] shall reestablish a residence in the Marionville area," she "shall not be entitled to custody for more than 17 days each month." The judgment provided that, in that event, neither party would be assessed child support.

Section 452.410.1, RSMo 1994, provides for modification of a custody decree, stating, in part:

1. Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of Section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

■ "In reviewing modification orders, appellate courts will uphold the trial court's order so long as it is based on substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or misapplication of law." *Mobley v. Phillips,* 942 S.W.2d 399, 400 (Mo.App.1997).

■ There is a presumption that the parent originally awarded custody remains suitable. *Basler v. Basler,* 892 S.W.2d 749, 750 (Mo.App.1994). The burden is upon the parent seeking a change of custody to prove a change in circumstances of the child or custodial parent which is so significant as to directly affect the welfare of the child and warrant a change of custody to serve the best interests of the child. *Mobley,* at 401.

■ In modification of child custody provisions, the "finding of a change in circumstances must relate to the circumstances of the child or the custodial parent, not the noncustodial parent." *Reeves–Weible v. Reeves,* 995 S.W.2d 50, 56–57 (Mo.App.1999). "An evidentiary basis to support a finding of a change of circumstances must be demonstrated which gives the trial court jurisdiction to consider making a change of custody." *McCubbin v. Taylor,* 5 S.W.3d 202, 207 (Mo.App.1999). The change in circumstances of the child or custodian " 'must be of a nature that the child will substantially benefit from the transfer of custody,' and a change in custody 'will be made only where the welfare of the child requires that custody should be

transferred.'" *Mobley,* at 401, *citing Guier v. Guier,* 918 S.W.2d 940, 947 (Mo.App. 1996).

■ "The wife, as well as the husband, is entitled to consideration in the site of her employment and where she desires to live." *In re Marriage of Dusing,* 654 S.W.2d 938, 942 (Mo.App.1983). In that case, there was a provision in the decree providing for transfer of custody to the husband if the wife moved from Butler County. This District found that such a provision restricting relocation "is a drastic method" by which to meet the child's need for contact with both parents, as the father contended. *Id.* The opinion notes, "This court has not been cited to, and independent research has not revealed, a decision in this state approving such a provision." *Id.* It concludes, "The provisions in question can result in a change of custody irrespective of the circumstances then existing. It was error to include in the decree the provisions in question." *Id.* at 943. Apparently, the provision before us here was given the same effect as the restriction in *Dusing.*

The Court of Appeals has noted,

"In our highly mobile society, inflexibly confining a custodial parent to a fixed geographic area simply to be proximate to the non-custodial parent is unrealistic, if removal to another area for reasons such as change of employment does not significantly interfere with the non-custodial parent's participating in the joint legal custody and is not inconsistent with the best interests of the child."

*McCubbin,* 5 S.W.3d at 209.[2]

In *Basler, supra,* decided prior to the revision of Section 452.377, RSMo Supp. 1998 (discussed *infra*), mother remarried and moved from southeast Missouri to Fulton, Missouri, where her new husband could obtain better pay in his employment. The separation agreement and decree in-

cluded a provision whereby a move outside a 3 county area could justify a change of custody. On father's motion for modification, the trial court awarded father primary custody of the couple's two children. The Eastern District found that mother's move was not a change of circumstances sufficient to warrant a change of custody and the custody change was reversed. It noted that "'modern transportation, lifestyles, attitudes and improved enforcement of divorce decrees under the uniform laws have resulted in relaxation of the rather rigid standards of the past [associated with a custodial parent's attempt to move from this jurisdiction].'" *Basler,* 892 S.W.2d at 751, *quoting Koenig v. Koenig,* 782 S.W.2d 86, 89 (Mo.App.1989).

■ In determining whether a motion to remove a child from Missouri should be granted, the courts have considered the following factors: "the length of the acquaintance between mother and her new husband; the extent of the discussion as to where the child will live and other living arrangements; and the extent of testimony as to the child's relationship with the new step-father and his family." *Basler,* at 751.

In *Elfrink v. Elfrink,* 620 S.W.2d 386 (Mo.App.1981) the court held that ex-wife's obtainment of employment and move outside of Cape Girardeau County was not such a significant change in circumstances of the children or their custodian as to warrant a transfer of custody of the children to the ex-husband, notwithstanding a clause in the separation agreement that provided that the residence of the children should not be removed from Cape Girardeau County without the approval of the court.

Likewise, *McCubbin, supra,* found that the trial court erred in modifying a prior joint custody judgment and changing primary physical custody to father, in that insufficient evidence existed "to support

**2.** *See generally* Mary Kay Kisthardt and Barbara Handschu, *Family Law: Custody Reloca-* *tion Cases,* NATIONAL LAW JOURNAL, November 13, 2000, at 17.

the trial court's finding that mother's intrastate move, by itself, constituted a substantial change of circumstances." 5 S.W.3d at 208. The Western District opinion states that there was no evidence presented demonstrating "that the distance between Poplar Bluff and Jefferson City, in this age of high speed travel and common use of communication technology, denied the parties the ability to comply with the visitation schedule, or to discuss the child's needs and resolution of those needs as effectively as they could if both parents were present in the same city." *Id.* Additionally, the opinion noted that no evidence was presented regarding the nature of father's involvement prior to the move that would require continuing close physical proximity to facilitate the existing relationship or that would indicate that the relocation would diminish father's present level of involvement and participation.

"A court should not, in advance, restrict a custodial parent's residence to a particular area of the state." *Fuchs v. Fuchs,* 887 S.W.2d 414, 418 n. 2 (Mo.App.1994)(amended decree prevented wife from relocating out of state if she wished to retain custody and "suggest[ed] that her residence was effectively restricted to 'Southeast Missouri' "), citing *Kline v. Kline,* 686 S.W.2d 13, 17 (Mo.App.1984). "Likewise, the court should not decree an automatic change of custody if the custodial parent moves from a particular county." *Fuchs, supra,* citing *Dusing,* 654 S.W.2d at 942–43. *See also In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App. 1986); *Michel v. Michel,* 834 S.W.2d 773, 776–77 (Mo.App.1992).

Ordinarily, nothing would prevent a custodial parent from moving to other locations within the state without prior approval from the court. *Fuchs,* 887 S.W.2d at 417. A trial court can make provisions to insure the child will have a relationship with both parents "without confining the residence of the custodial parent." *Id., citing Kline,* 686 S.W.2d at 17.

In its order modifying the judgment, the trial court in the present case stated, "Petitioner, Mother, did not file any motion to relocate the children per [§ 452.377, RSMo]. This Court is required to consider the failure to give notice as one factor in determining whether custody or visitation should be modified."

The circumstances here do not establish any violation of § 452.377, which would justify a change in custody. Appellant moved to Parkville, Missouri, to live with her new husband on August 2, 1998, prior to August 28, 1998, the effective date of § 452.377. But, as earlier noted, at the time Appellant moved, Respondent had custody of the children under the Amended Judgment entered by the circuit court. That Amended Judgment was later held to be invalid in *Jennings I.* Respondent knew when *Jennings I* was decided that Appellant was living in Parkville, as the children were staying with her there pursuant to a two-week visitation period. As Respondent had primary custody of the children before *Jennings I* was decided, there was no issue in *Jennings I* has to whether the children should primarily remain in Marionville.

Upon review of the record in the present matter, we believe that any requirement that the children remain in Marionville must be removed from the judgment and Respondent's motion to modify be denied and Appellant's motion (denominated "Counter Petition") be granted, allowing her to have custody of the children and to take them to Parkville. It is apparent that the trial court made its decision based solely upon the fact that the children had been taken from the Marionville area, as the court provided that if Appellant returned to Marionville she could have physical custody of the children more than Respondent and would not pay any child support. Appellant met the burden placed on her under § 452.377.9, to show that the relocation was in good faith and in the best interests of the children.

The record does not establish that the court's modification of the decree nor the requirement that the children remain in the Marionville school district was in the best interests of the children.

The order modifying the dissolution decree is reversed, and the trial judge is directed to enter an order denying Respondent's motion to modify the decree, sustaining Appellant's motion to amend, and conducting such other proceedings as the court may deem proper, all in accordance with this opinion and the opinion in *Jennings I.*

BARNEY, C.J. and GARRISON, J., concur.